## Joliet Railway Co. v. W. D. B. Linn.

1. WAIVER—*Of Errors Assigned But Not Argued.*—Errors assigned upon rulings relating to evidence and instructions are waived if not argued.

2. VERDICTS—*When Not to be Disturbed by the Appellate Court.*— Where the court of review can not say the jury ought to have rendered a different verdict, the conclusion of the jury upon the facts, approved by the trial judge, will not be disturbed.

Action for Killing Domestic Animals.—Appeal from the County Court of Will County; the Hon. A. O. MARSHALL, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed February 13, 1901.

D. F. HIGGINS and E. MEERS, attorneys for appellant.

GEORGE A. BARR, attorney for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On January 13, 1898, a horse owned by W. D. B. Linn was struck by an electric car operated by the Joliet Railway Company on Collins street in the city of Joliet, and was fatally injured. Linn sued the railway company therefor before a justice of the peace and recovered judgment. Upon the first trial of an appeal to the County Court the jury disagreed, and upon a second trial Linn obtained a verdict and a judgment for $65, the undisputed value of the horse,

from which judgment the railway company prosecutes this
further appeal.   The errors assigned upon the rulings of the
court relating to evidence and instructions are not argued.
and are therefore waived.   The only questions argued are
whether the motorneer in charge of the car exercised due
care to ascertain the presence of the horse upon the track
ahead of him and to avoid striking him; whether he ran
the car at a speed which was negligent in view of all the
conditions then existing; and whether Christ Pauli, a serv-
ant of Linn, then riding the horse, exercised due care to
avoid the injury.

Collins street lies north and south.   The car was bound
south and Pauli was ahead of the car riding the horse south
on the right hand or west side of the street.   The railway
had a single track and it was west of the center of the street,
leaving a narrower way for travel west of the track than
east of it.   The street was lighted by electricity and the
car had an electric headlight, throwing a light a considerable
distance ahead and also to each side.   The car had stopped
at a switch about two blocks north of the place of the
accident, and had waited there a little time for a north-
bound car which did not come, and then had started ahead
to make the next switch, which was around a corner on
another street.   The time was about 6:15 P. M., and the
street was one much traveled by the public.   The evidence
for plaintiff tended to show that the horse was feeling good
and began to prance back and forth over the traveled way
west of the track and on and off the track; that a buggy
passed on the west side of him and made him more uncontrol-
lable, and that the same effect was produced by the approach
of the car.   The evidence for plaintiff tended to show the
horse was several times on and off the track in going a dis-
tance of sixty or seventy feet; that his rider was unable to
control him or direct his course or keep him off the track;
and that the horse and his several movements on and off the
track, and the lack of control by his rider, were seen by a
passenger riding on the front end of the car in time so that
if the motorneer had then seen it he could have stopped or

very greatly checked the speed of the car; and that its speed was fifteen or twenty miles per hour. Witnesses for defendant saw the horse go upon the track only at the instant he was struck, but part of them, at least, did not claim to have been looking ahead or noticing the horse till that instant, and would not swear he had not been back and forth upon and off the track before. The motorneer did not see him until an instant before he was struck, and then used the appliances for stopping the car, but too late to perceptibly reduce the speed till after the car struck the horse. Defendant's proof tended to show the speed of the car was only from eight to fifteen miles per hour.

Defendant urges that the preponderance of the evidence upon the question whether its motorneer was negligent is with defendant. We conclude the evidence is so close upon the subject that a verdict either way, approved by the trial judge, should not be set aside by this court, where it is conceded that the rules of law governing the conduct of defendant and the traveling public were correctly laid down to the jury.

We find no reason for attributing to Pauli any lack of due care. He seems to have done all he could to keep the horse off the track. He was riding from his home to his employer's livery stable by a direct route. There is nothing to indicate he had any reason to expect the horse would become unmanageable, and therefore it does not appear due care required him to take some other street, upon which there was no street car line. Linn did not regard the animal as a ladies' horse, or gentle enough to let out to ladies, but that furnished no reason why he should be required to avoid the streets upon which the cars ran.

We can not say that this jury ought to have rendered a different verdict or that it is probable another jury would find another way.

The judgment is therefore affirmed.